Good morning. May it please the Court, Michael Perkins of Fine Bogs and Perkins, appearing on behalf of Appellants, Applied Underwriters, and Applied Risk Services, Inc. In this case, Applied Underwriters has met its burden of showing a prima facie case of specific jurisdiction in California over the respondent, Combined Management, Inc. Specific jurisdiction has a three-part test. The first part of specific jurisdiction is the purposeful availment prong. To satisfy purposeful availment, the non-resident defendant must purposefully direct activities to the forum state or consummate some transaction with forum residents. In the present matter, both of these elements have been satisfied. First, Combined made the first contact with Applied Underwriters in California. How did they do that? They did that through their agent who was searching out insurance for them in Maine. This is Barrow? Correct. This is Barrow. Barrow is located in Georgia. Barrow is located in Georgia, correct. But he is Combined Management's agent. He's their insurance broker. Mr. Barrow was the individual who contacted Mr. Carl DeBarbery of Applied Underwriters in San Francisco. So the first contact, the first outreach in this case, came from Combined Management's agent to Applied Underwriters in San Francisco. So that is their purposeful reaching out requirement of purposeful availment. The second prong of purposeful availment is that the non-resident defendant consummated some transaction within the forum. And that also has happened here as Mr. Murch testified. Mr. Murch is the president of Combined Management. He testified in his affidavit that he communicated with, again, Mr. DeBarbery here in San Francisco, that they negotiated, that Mr. DeBarbery made a proposal about insurance premiums and how the numbers would be calculated. And Mr. Murch, on behalf of Combined Management, accepted that proposal and consummated an agreement here in California. So the first two, both elements, in fact, and it's an either-or requirement for purposeful availment, but both of those elements have been satisfied in this case. How was the contract signed? Was the fax back and forth? I believe it was, Your Honor. Combined Management takes a position that it wasn't signed. There is a written agreement, and that's obviously going to be a dispute of fact once the case goes forward. Was there a ‑‑ there was no forum selection clause in the contract? There actually was a forum selection clause, and that was Nebraska, which is why Applied originally brought this case to Nebraska to begin with. There's a forum selection clause for both parties in Nebraska? The forum selection clause, as I recall, simply states that the parties agree that disputes will be resolved in Douglas County, Nebraska. How about a choice of law provision? I do not recall right now whether there's a Nebraska choice of law provision within the agreement or not. I can certainly check on that. But once purposeful availment has been established, as it has here, then there is a presumption that jurisdiction is proper in the forum state, and the defendant or the party moving to change venue has to present a compelling case that the exercise of jurisdiction would be unreasonable. So we have established that presumption that jurisdiction is reasonable here in California. The second prong of specific jurisdiction is the claim must arise out of or relate to the defendant's forum-related contacts, and neither side disputes that that is the case. This is a breach of contract claim relating to the contract that was negotiated and proposed between the parties. The third element of specific jurisdiction is the exercise of jurisdiction must comport with fair play and substantial justice. But this is where the presumption comes in once you establish the purposeful availment. The presumption is that the defendant must present this compelling case. In the present matter, the defendant has not presented any such compelling case that jurisdiction in California would be unreasonable. Now, the defendant has attempted to maintain that it's a small company and it would be a great burden for it to travel from Maine to California to defend itself. This is not a small matter. The contract at issue had over $1.2 million of premiums going back and forth. The amount of money at dispute in this case exceeds $278,000. So this is not a situation where we have a consumer or a small company being dragged across the country to defend itself. This is not a situation where it would be so expensive for combined management or so burdensome for combined management to come to San Francisco that the court should say, well, it doesn't comport with the fair play and substantial justice. There's a couple other points I want to make. Physical contact with the state is not required to establish personal jurisdiction. Now, combined management has made an argument that it's never traveled here and none of its employees have ever traveled to California, therefore it shouldn't be held into court here in California. But that physical presence isn't required. All that is required to establish personal jurisdiction in California is the purposeful direction of an act having an effect in the foreign state. And as established earlier, that has happened in two ways, through combined management's agent reaching out to Applied in California and by combined management negotiating and agreeing to a contract with Applied in the State of California. And I will reserve the remainder of my time with the permission of the Court for rebuttal arguments. Let me ask you one question. I think, and I just want to check what your brief says. I think that you suggested that there was the performance was in California. That's correct, Your Honor. The dispute in this case is not the processing of workers' compensation claims in Maine. There's no issue about workers being covered or insurance coverage. The only dispute in this case is the profit-sharing portion of the insurance contract. And essentially what happened was the agreement was that both sides would share the risk and the benefits of the claims. So if there were a large number of claims, then combined management would share in the risk of that. And if there were a small number of claims, combined management would receive a refund. Does the case law allow you to slice off all the activities in Nebraska for purposes of analyzing whether there's specific jurisdiction? It would seem to me that the vast bulk of the activity was in Nebraska. They processed the claims there. Inquiries were made there. Payment was remitted there. Does that all go out of the picture because you contend it's a breach of the contract which was negotiated in California? I'd like to make two points to that question, Your Honor. First, it's true that the processing of the workers' compensation claims did occur in Nebraska. But that's not what the dispute is in this case, as I explained. But that's my question. Yes, I believe that. If the dispute is a small portion of the overall activities, do we ignore the overall activities? Yes. In this case, I believe we can disregard the activities that happened in Nebraska because the profit-sharing calculations, which is the dispute in the case, occurred here in California. But does that mean the contract was performed in California just because your dispute is over? Your dispute could be how much is due. That's not something that was performed somewhere. When you look at the jurisdiction, you look at was the contract to be performed here. Yes, that's correct, Judge. And, yes, I do believe the contract was performed here, particularly that section of the contract, because the persons who were calculating the numbers to make the determination were located here in California. The second point to answer your question about Nebraska, applied underwriters attempted already to have this matter in Nebraska. Combined Management successfully had the Nebraska action dismissed, claiming that all of their contact with applied underwriters came from California. So we, Applied Underwriters, has already tried to go to Nebraska, where the muscle center, so to speak, of Applied Underwriters is, and have the case there. And based on the affidavits and evidence submitted by Combined to Nebraska Court, they said everything was here in California, which is why we brought the case here in California. All right. Thank you. We'll give you a couple of minutes. Thank you, Your Honor. Good morning, Your Honor. Your Honor, Tim Bryant for the respondent, along with my colleague, Simon Goodfellow. May it please the Court, Combined Management, with respect to the request that the Court affirm the district court's decision to dismiss this case for lack of personal jurisdiction. Could you address the last point? Counsel says the reason this case was dismissed in Nebraska was because you told the court that everything happened in California? That's not accurate, Your Honor. We argued the same thing we're arguing here, is that everything happened in Maine, and that my client never left Maine, and that we had, at best, tangential connections to Nebraska. And the court found the question you were just asking about all of the operations and the checks going back and forth. The court recognized that. We didn't just – there's an affidavit from Tom Brown in your file where he talks about that. My client said that his negotiation was with representatives in California, but he didn't dispute the fact that the checks went back and forth. That's where the Maine operations, where they handled the claims, were. Isn't the Merch Declaration virtually identical here as filed in Nebraska? Yes. It's the same. The facts are not in dispute. He's saying we've always been in Maine. I had contacts with Nebraska, but it didn't involve the negotiation of the contract. I've had contacts with California, but it didn't involve the operation of the contract. But, Counsel, the first Merch Declaration, the one that was filed in Nebraska, emphasized all of the contacts you had with California. I don't disagree that it emphasizes California, but it also emphasizes other places, Maine, Illinois, and then if you look on the first page of the proposal that's exhibited, the complaint, the Hawaii captive insurance company owned by Applied that issued the so-called profit-sharing statement that we don't think exists, by the way, because there is no signed contract. So I respectfully disagree with that portion of what was said earlier. There is no signed contract. Well, he said that would be a question of fact. Well, the contract is attached to the complaint, Your Honor, so he can't allege that there's a signed contract and attach one that's not signed and then say it's an undisputed fact. The disputed fact is when we disagree with them. When they disagree with themselves, it's not an undisputed fact. He's saying there's a signed contract and the reference is in the complaint, but then doesn't attach one. So I guess I would question whether the Court has to defer to the allegation when the allegation is refuted by the very exhibit that it incorporates. That's what's done here. This profit-sharing statement was an invoice. Applied puts a good deal of weight on the role of Barrow, and that's not entirely clear to me from the record exactly what Barrow did. Could you address that? Sure. Barrow was my client's agent, and in this particular case, there is an e-mail in Todd Brown's affidavit where he communicates back and forth with him. That's not inconsistent with what my client said. My client said they reached out to Virginia Surety. They put him in touch with Applied, and so Mr. Barrow is reaching out to Applied to talk about this. But I don't agree that that's the first point of contact, respectfully. The first point of contact is when Applied registered to be an insurance broker in the State of Maine. That's the first contact. But for that contact, we're not here today. If they didn't license themselves or register, I'm not sure what the proper word is, to be an insurance broker in the State of Maine, we wouldn't be here. They availed themselves of the benefits or privileges of doing business in Maine. Well, there's little question this lawsuit could be brought in Maine, and you might well have a – if you had been the plaintiff, been the other side of the – been the top side of the brief, well, you might well have had a good argument that you've got personal jurisdiction over them in Maine. That's not the question. The question is whether there's also personal jurisdiction over you in California. I don't disagree with that. I think I was addressing the more the issue was raised, what was the first contact, and I was suggesting it wasn't the reaching for the – I think if you look at page 16 to 18 of the record, you'll see there are three occasions where Mr. Perkins conceded to Judge Zimmerman that his client was put in touch with our client by Virginia Surety. If you look at the oral argument from the lower court, that's exactly what it says in the record. Who did Barrow contact first? Who did Barrow reach out to first? It's my – the only evidence of that in the record is the email that Your Honor's talking about. They sent to Barbee in San Francisco. Yes. But there's no reference in that email that that's where DeBarbee was located at the particular time. It just has an email address to apply, and it says I have someone for you. But the sworn testimony from my client in his declaration is that he reached out to Virginia Surety first, and Virginia Surety put them in touch with Applied, and that's the issue that was conceded in the lower court. Again, page 16. Who reached out to Virginia Surety? Bob Murch reached out to the Chicago, Illinois-based Virginia Surety. And Your Honor's right about my client – excuse me. Your Honor's right about we could have brought – it could be in Maine, and the question is here. But when you look at the different fact pattern of all the different people, we have a Hawaii-based captive insurance company. But where do you think it should be brought? In the State of Maine, which is what we said to the Nebraska court, and it's what we're saying to you. It's what we said to Judge Zimmerman. They should have just sued us in Maine. They have personal jurisdiction there. They availed themselves of the jurisdiction. They licensed to sell insurance there. They sold insurance there. They didn't get paid, and for some reason they haven't sued us there. And that's kind of the unanswered question here is why? Why wouldn't they just sue us here? They're already registered to do business there. It's not like they don't have the ability to do that. They're a large national company that does business all over the United States. Why wouldn't they just sue our company unless they're trying to form shop for some reason, which is sure what it seems to us like, that that's what's really going on here. But going back to – so I think that handles ad nauseum, I guess, the first contact question that was raised. I already addressed that it wasn't a consummated transaction because there is no  You'll see that this profit-sharing dispute is actually a bill. It says profit-sharing statement at the top of it, and it's nothing more than a bill, and Judge Zimmerman asked about that at the lower court. Are there any declarations about this so-called contract? And they said no. So all there is in there is that there's an agreement, but then when you look at the referenced agreement, it's a bill. Where did we get the forum selection clause? I don't know, and I'm happy to hear them say it was Nebraska. I suppose that helps my case, but I can't honestly answer your questions. I know where it is because I have another. That Exhibit A to the complaint is actually a proposal, which was never signed and consummated. That's where the reference to a – on page 2 of it, applied underwriters indemnity, RAC, which is a Hawaiian captive insurance company. And it also says in there that it has to be countersigned, and there are stipulations which were never met. This is the proposal. So it isn't alleged that there was an oral agreement between the parties. It's alleged there was a written contract. Well, there has to be offer, acceptance, signatures of the parties, and consideration. And we're missing the signatures here, Your Honor, that they're referencing. So, again, I'll say I understand that all the facts have to be interpreted in their favor, but I don't think that they can contradict themselves. And that's why I would – the other thing I would point Your Honor's attention to, and I'm sure you're familiar with it already, is Todd Brown's affidavit where he says Nebraska, Nebraska, Nebraska, Nebraska. The counsel just stood up here and said that all the interactions for the profit sharing statement were with the State of California. But Todd Brown, their own representative, says no, they weren't. So it's difficult for me to understand how they can get around that. In the last – I guess I suppose the last issue is judicial estoppel, which brings us back to the beginning, coming in a big circle. My client didn't argue a different thing. Nebraska argued the exact same thing as Your Honor just pointed out. And I don't think that it should be held against my client that they're arguing that it should be in Maine and that there's not personal jurisdiction in either State. To your question about – the question here is, is California appropriate? What we argue in Nebraska is the exact same thing that we're doing here, which is we don't have minimum contacts with California, so it should be brought in Maine. That's precisely what we argue. That's precisely what should happen. If we get beyond that, the last point that was raised by counsel is the reasonableness prong of the minimum contacts test. Recognizing that Your Honor doesn't believe that that should be reached at all from your recent concurring opinion, I understand that. And so – but assuming that is the law, we have to argue that point. And I think the most compelling piece of that seven-part test is that the forum – right to your point, by the way – that the forum is more appropriate in Maine. Look at what we have here. We have a Chicago, Illinois insurance company issuing a workers' compensation policy in the State of Maine, brokered by an agent in Georgia. The insurance company's insurance brokerage agent is in Omaha, Nebraska. They have a sales office in California and a captive insurance company in Illinois. And through all of that, Applied believes that that means that California is the appropriate forum. And I would suggest, Your Honor, under those circumstances, because the licensing of the broker and the insurance company, the policy itself, the presence of my client in the original reaching out was the registration in the State, that Maine has a more compelling interest to hear the case than the State of California does. Thank you, Your Honor. Thank you, counsel. With your permission, I'll be brief. I just want to address a couple of points. First of all, with respect to Combine's claim that there was no consummated contract, that's, by the evidence, that's just simply not true. The contract was performed for the full year, as Mr. Merch testified in his affidavit. So there is a consummated contract. Whether or not, obviously there is a dispute about whether or not it's signed or not, but there is a completed contract because all performance had been done. With respect to these disputes of fact, though, this court decided in the Ochoa case that the allegations and the pleadings have to be interpreted in the favor of appellant and any disputes in the evidence have to be interpreted in favor of the appellant. And that makes sense at this point because we haven't had a chance to do discovery. But is your assertion in the complaint that the contract was entered into and performed in San Francisco sufficient in and of itself for jurisdiction? Yes, it is. That is where a contract was entered into and where it was performed. Is your allegation sufficient to confer jurisdiction? Yes. In the complaint it is because that allegation has to be accepted as true for purposes of this pleading motion. Isn't that pled in a fairly conclusory fashion? I believe it is pled in a conclusory fashion. Yes, it is. But when I filed the complaint, remember I filed it in Superior Court of California and I didn't anticipate that there was going to be a need to plead in great detail why the contract was performed in California or why the contract was entered into in California. But the evidence before this Court, particularly Mr. Mercer's own declaration about how the negotiations happened here in California and how the contact came from, originally came from Combine's agent to Mr. DeBarberie here in California, are sufficient to meet the specific jurisdiction standard. Thank you, counsel. Thank you. Thank you both. The case just argued will be submitted.
judges: Selna, Reinhardt, Bybee